UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM THOMAS SMITH,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 11cv5203-BHS-JRC<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>NOTED: April 27, 2012 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (<u>see</u> ECF Nos. 19, 22, 26).

The ALJ failed to evaluate properly the medical evidence by failing to give specific, legitimate reasons supported by substantial evidence in support of her failure to credit fully the opinions of examining doctor, Dr. Opelenik regarding plaintiff's physical

limitations; and, in support of her failure to give controlling weight to the opinions of treating physician, Dr. Karakus regarding plaintiff's mental limitations. Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

BACKGROUND

Plaintiff, WILLIAM THOMAS SMITH, was forty-six years old on his alleged date of disability onset of March 10, 2005 (Tr. 11, 103). Plaintiff has many years of earnings through 2005 (Tr. 118). He testified that he worked on and off until he was involuntarily hospitalized in 2005 (Tr. 27).

Plaintiff was admitted involuntarily to the hospital in August, 2005 and detained for 14 days after he reportedly called the police and then went to a public space with a machete, asking the police to shoot him (Tr. 16-17, 237). He allegedly presented in a decompensated state (Tr. 237). At that time, the "professional staff" of Puget Sound Behavioral Health had examined and analyzed plaintiff's condition and determined that as a result of a mental disorder plaintiff was "gravely disabled" (Tr. 241). He was committed for an additional 90 days at Western State Hospital (Tr. 17). Following treatment, the record demonstrates waxing and waning of plaintiff's mental health symptoms (see id.).

PROCEDURAL HISTORY

Plaintiff filed applications for Supplemental Security Income and Disability Income benefits on November 22, 2005 (Tr. 103-110). His applications were denied initially and following reconsideration (Tr. 69-72, 74-77). Plaintiff's requested hearing

was held on August 22, 2008 before Administrative Law Judge Ruperta M. Alexis ("the ALJ") (see Tr. 22-64, 79). On April 28, 2009, the ALJ issued a written decision in which she found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 8-21).

On September 10, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 2-4). See 20 C.F.R. § 404.981. In March, 2011, plaintiff filed a complaint seeking judicial review of the ALJ's written decision (see Tr. 1; see also ECF Nos. 1, 3). On June 15, 2011, defendant filed the sealed administrative transcript regarding this matter ("Tr.") (see ECF No. 14). In his Opening Brief, plaintiff challenges the ALJ's review of: (1) the medical evidence; (2) the lay evidence; and (3) the ALJ's step-five finding based on hypothetical situations presented to the vocational expert (see ECF No. 19, p. 10).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other

substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the

adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Molina v. Astrue, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. Molina, supra, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; see also 28 U.S.C. § 2111; Shinsheki v. Sanders, 556 U.S. 396, 407 (2009); Stout, supra, 454 F.3d at 1054-55.

## DISCUSSION

1. The ALJ failed to evaluate properly the medical evidence.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (treating physician is one who provides treatment and has "ongoing treatment relationship" with claimant). However, "[t]he ALJ may disregard the treating physician's

opinion whether or not that opinion is contradicted." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). On the other hand, an ALJ need not accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195

(9th Cir. 2004) (*citing* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831); see also 20 C.F.R. § 404.1527(d)(2)(i).

    a. Plaintiff's physical limitations: Dr. Andrea J. Opalenik, D.O. ("Dr. Opalenik"), examining doctor

Dr. Opalenik examined plaintiff on December 19, 2008 (Tr. 544-78). She provided various opinions regarding plaintiff's functional abilities and limitations. The ALJ included the following in her written decision:

> As to other limitations, Dr. Opalenik indicated that the claimant was unable to climb and balance, that he can occasionally stoop, kneel, crouch, crawl, and reach occasionally, but not reach overhead, that he is unable to operate foot controls, and noted a number of environmental limitations (internal citation to Exhibits 25F, 26F). While there is

> evidence of right calf muscle atrophy, numbness in the low back, and reported pain on external rotation of the arms over the biceps, tendons and the supraspinatus areas, Dr. Opalenik observed that the claimant was able to move in and out of a chair easily, move his arms comfortably, and walk easily. Moreover, the claimant did not exhibit motor strength deficits in any of the muscle groups (internal citation to Exhibit 25F). Further, the claimant's daily functioning and other reported activities discussed above do not support finding such limitations. Accordingly, less weight is given to those findings.

(Tr. 18).

Although it is within the responsibility of the ALJ to resolve conflicting opinions by doctors as to the meaning of the medical evidence, in order to fail to credit the opinion of an examining doctor in favor of a non-examining doctor, "the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." See Van Nguyen, supra, 100 F.3d at 1466 (emphasis in original). In order to do so, the ALJ should not rely on her own interpretation of the medical evidence over that of a doctor without sufficient explanation. See Reddick, supra, 157 F.3d at 725; see also Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted).

Here, when discounting the medical opinion of Dr. Opalenik, the ALJ repeats information from the record provided by Dr. Opalenik. The ALJ made the medical finding that plaintiff's right calf muscle atrophy, his numbness in the low back, reported

pain and the remainder of the observations of Dr. Opalenik in support of her opinion, are outweighed by the fact that plaintiff could move in and out of a chair easily; move his arms comfortably; walk easily; and demonstrated a lack of motor strength deficits (see Tr. 18). Dr. Opalenik was aware of these facts relied on by the ALJ, and nevertheless found that plaintiff suffered from specific functional limitations on his ability to work. The ALJ failed to explain why her interpretations of the medical report and observations of Dr. Opalenik were more correct than the interpretations of the medical report and Dr. Opalenik's observations by Dr. Opalenik herself. See Reddick, supra, 157 F.3d at 725.

The only other reason provided by the ALJ to fail to credit fully the opinion of Dr. Opalenik was that plaintiff's "daily functioning and other reported activities discussed above do not support finding such limitations" (Tr. 18). Plaintiff's reported activities of daily living noted by the ALJ include going to the library; attending AA meetings; bowling once a week; working on the computer; playing chess; reading; camping; watching television; playing the guitar; and, fishing (Tr. 17). The ALJ does not explain how such activities justify the failure to adopt Dr. Opalenik's opinion as to "other limitations," such as that plaintiff could not climb and balance; could only occasionally stoop, kneel, crouch, crawl, and reach, but not reach overhead; could not operate foot controls; and suffered from a number of environmental limitations (see id.).

For the reasons stated and based on the relevant record, the Court concludes that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for her failure to credit the opinion of Dr. Opalenik over that of the non-examining, state agency physician. See Van Nguyen, supra, 100 F.3d at 1466. For

this reason, the Court concludes that this matter should be reversed and remanded to the Commissioner for further administrative proceedings.

      b. Plaintiff's mental limitations: Dr. Sule Karakus, M.D. ("Dr. Karakus"), treating physician

This case largely deals with plaintiff's mental health issues. As discussed already, plaintiff has been hospitalized involuntarily for mental illness, see supra, BACKGROUND, and, as found by the ALJ, plaintiff's severe impairments include sciatica, ankle pain, lower extremity neuropathy, bipolar disorder, an intermittent explosive disorder and alcohol dependence (Tr. 13). In addition, according to the testimony of the medical expert, plaintiff's predominant psychiatric condition was bipolar disorder and plaintiff's bipolar disorder probably met or medically equaled the severity of a Listed Impairment pursuant to the federal regulations (see Tr. 51-52). The medical expert testified that the fact that plaintiff missed appointments likely was a product of his mental illness and beyond his control (Tr. 53).

Dr. Karakus treated plaintiff over the course of years, regularly examining him and observing his mental health from at least December 21, 2005 through June 25, 2007 (see Tr. 418, 513; see also Tr. 408-18, 427, 431, 439, 512-13, 525, 530, 536, 541). On May 11, 2006, Dr. Karakus provided specific opinions regarding plaintiff's ability to work (Tr. 445-48). She opined, among other things, that plaintiff suffered from severe limitations in his ability to interact appropriately in public contacts; and, to respond appropriately to and tolerate the pressure and expectations of a normal work setting (Tr. 447). She also opined that plaintiff suffered from marked limitations in his ability to understand,

remember and follow complex instructions; to exercise judgment and make decision; and, to relate appropriately to co-workers and supervisors (id.). Dr. Karakus opined that plaintiff had "a severe chronic mental illness," and easily would "decompensate with pressures and frustrations" (id.).

The ALJ included the following in her written opinion:

> On DSHS forms, Dr. Karakus and Mr. Doviak checked boxes indicating that the claimant has a (sic) several moderate, marked, and severe cognitive and social limitations. Dr. Karakus commented that the claimant will easily decompensate with pressures and frustrations, and that Depakote causes loss of fine motor control (internal citation to Exhibit 20F, 22F). Although they both are treating mental health providers, these ratings are inconsistent with their treatment notes, which show that the claimant's mental symptoms significantly improved with medication management. Further Dr. Karakus' comment about medication is inconsistent with treatment notes in which she indicated that his reported side effect was possibly related to a physical condition, not medication (internal citation to Exhibits 15F, 19F, 24F). Therefore, lesser weight is given to the ratings which are inconsistent with a residual functional capacity for unskilled work with limited interaction with co-workers, supervisors, and the public.

(Tr. 18-19).

The Court already has concluded that the ALJ provided her own interpretation of the medical evidence over that of Dr. Opalenik's interpretation without sufficient explanation, see supra, section 1. As discussed already, although it is within the province of the ALJ to resolve conflicting opinions of the doctors regarding the medical evidence, an ALJ must not rely on her own interpretation of the medical evidence over the interpretation of the medical evidence of the doctor without sufficient explanation. See Reddick, supra, 157 F.3d at 725; see also Schmidt, supra, 914 F.2d at 118 ("judges, including administrative law judges of the Social Security Administration, must be

careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them") (internal citations omitted). However, regarding plaintiff's mental limitations, the ALJ again relies on her own interpretation of the medical evidence over those of the doctor, as discussed further below.

In failing to give the opinions by this treating doctor controlling weight, the ALJ relies heavily on her finding that plaintiff's mental symptoms "significantly improved with medication management" (Tr. 19). However, even if one assumes that plaintiff experienced improvement, it does not follow necessarily that he became capable of work activities, or that he no longer suffered from debilitating functional limitations regarding his ability to work.

Secondly, Dr. Karakus, as plaintiff's treating doctor, was aware of any improvement experienced by plaintiff as a result of his medications. This especially is the case here as Dr. Karakus specifically was responsible for managing plaintiff's medications (see, e.g., Tr. 400, 402, 404). Yet, Dr. Karakus nevertheless opined that plaintiff suffered from specific functional limitations despite any improvement due to medications (see, e.g., Tr. 447). The ALJ has not explained sufficiently why her opinion of plaintiff's improvement due to medication is more correct than that of Dr. Karakus, the treating physician responsible for plaintiff's medication management. See Reddick, supra, 157 F.3d at 725; see also Schmidt, supra, 914 F.2d at 118.

The opinions by the state agency doctors relied on by the ALJ were provided in January, 2006, and affirmed in June, 2006 (Tr. 368, 421). If the ALJ found any ambiguity

as to the continued relevance of Dr. Karakus' functional assessment provided in May, 2006 as a result of plaintiff's potential improvement with medication, she had a duty to develop the record, such as by seeking an updated functional assessment from plaintiff's treating physician. See Tonapetyan, supra, 242 F.3d at 1150; Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). This duty is "especially important when plaintiff suffers from a mental impairment." See Delorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

It appears from the record that the ALJ relied on her own medical interpretation of the evidence in order to find that plaintiff experienced sufficient improvement from medication management in order to increase significantly his functional ability to work. However, the ALJ's finding that plaintiff's mental symptoms significantly improved with medication management is not supported by substantial evidence in the record as a whole. For example, Dr. Karakus noted that plaintiff reported on January 19, 2006 that he had been depressed for the past few weeks (Tr. 412). She also indicated her objective observation that he presented "rather depressed" (id.). He reported low energy and that his self-esteem was low (id.).

The discussion by the ALJ of plaintiff's improvement with medication covers early 2006 (see Tr. 17). As characterized by the ALJ, plaintiff's symptoms "waxed and waned" during the latter half of 2006 and into 2007 (see Tr. 17). On January 17, 2008, plaintiff's treating mental health provider, Mr. Tadeus J. Doviak, Jr. ("Mr. Doviak ") indicated that plaintiff recently had been "on a 'big emotional roller coaster'" and had

been depressed (Tr. 495; see also Tr. 18). Mr. Doviak indicated that plaintiff's depression and fear "got bad and he went back to drinking" (Tr. 495).

On February 12, 2008, Mr. Doviak noted plaintiff's subjective complaints of depression, lack of energy and lack of motivation (Tr. 491). Plaintiff reported feeling "like he crashed after getting through all his appointments from last month" (id.). Plaintiff had similar reports of depression, lack of energy and lack of motivation on March 3, 2008 (Tr. 490).

On April 9, 2008, even though he did have an appointment for mental health treatment, plaintiff showed up angry at Mr. Doviak's office, loudly "stating that he [wa]s upset about the letter that was written to the court saying he wasn't complying with treatment here" (Tr. 489). He threw the letter at Dr. Doviak and continued "to be irate the rest of the session" (id.).

Plaintiff similarly reported depression, lack of energy and lack of motivation on June 4, 2008 (Tr. 482). Plaintiff indicated that his depression was at a seven (id.). Similarly, on July 30, 2008, plaintiff reported depression at seven, and reported sleep disturbance (Tr. 476).

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ's finding of an inconsistency between Dr. Karakus' opinions regarding plaintiff's functional limitations, and treatment notes by Dr. Karakus and Mr. Doviak suggesting improvement with medication management, is not a finding based on substantial evidence in the record as a whole. As a result, the ALJ's reliance on this

inconsistency to support her failure to credit fully Dr. Karakus' opinions does not provide support for such failure.

In addition to relying on her finding that plaintiff's mental symptoms "significantly improved with medication management," the ALJ also relied on a finding that Dr. Karakus's opinion that plaintiff was suffering from loss of fine motor control from Depakote was inconsistent with her indication in treatment records that this reported side effect possibly was related to a physical condition and not medication (see Tr. 19 (*citing* Exhibits 15F, 19F, 24F); see also Tr. 410). Dr. Karakus' treatment records include the following:

> He says, that he has been dropping light weight objects such as pens and pencils. We discussed that this could even be secondary to a cervical disk rather than a side effect of the medications. He says that he did not have such complaints before he started to take the medications. We discussed with him, that if these side effects started to bother him, we might consider to change medications (sic).

(Tr. 410).

Based on a review of the relevant record, the Court concludes that the ALJ's finding of an inconsistency in Dr. Karakus' treatment record regarding medication side effects does not provide much support for the ALJ's failure to credit fully Dr. Karakus' opinions. The practice of ruling out diagnoses is common in medicine and simply because a physician suggests ruling out other potential causes for symptoms or side-effects that plaintiff may have been suffering from does not make Dr. Karakus' opinion internally inconsistent. Again, if the ALJ found that the record was ambiguous as to the cause of plaintiff's dropping of objects, she had a duty to develop the record further. See

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 15

Tonapetyan, supra, 242 F.3d at 1150; Mayes, supra, 276 F.3d at 459-60; see also Delorme, supra, 924 F.2d at 849.

The ALJ relied on opinions from non-examining doctors instead of giving controlling weight to plaintiff's treating doctor. However, based on the reasons stated and the relevant record, the Court concludes that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for her failure to credit fully the opinions of Dr. Karakus. See Lester, supra, 81 F.3d at 830-31. Therefore, this matter should be reversed and remanded for further consideration of plaintiff's mental limitations on his ability to work.

2. The lay evidence should be evaluated anew following remand of this matter.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and chiropractors, who are considered other medical sources, see 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d), (d)(3)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th

Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

The Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (*quoting* Van Nguyen, supra, 100 F.3d at 1467) (*citing* Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)). Testimony from "other non-medical sources," such as friends and family members, see 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009).

In addition, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, supra, 454 F.3d at 1056 (reviewing cases). However, if the ALJ has provided proper reasons to discount the lay testimony in another aspect of the written decision, such as within the discussion of plaintiff's credibility, the lay testimony may be considered properly discounted even if the ALJ fails to link explicitly the proper reasons to discount the lay

testimony to the lay testimony itself. See Molina, supra, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46 (*quoting* Lewis, supra, 236 F.3d at 512). The Court will not reverse a decision by an ALJ in which the errors are harmless and do not affect the ultimate decision regarding disability. See Molina, supra, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; see also 28 U.S.C. § 2111; Shinseki v. Sanders, 556 U.S. 396, 407 (2009).

Although the ALJ provided germane reasons to discount some of the opinions offered in lay statements, she did not provide germane reasons to discount all of them. In addition, the Court already has determined that this matter should be reversed and remanded due to error in the review of the medical evidence, see supra, section 1. For these reasons, the Court concludes that the lay evidence should be evaluated anew following remand.

Plaintiff also challenges the ALJ's step-five finding based on hypothetical situations presented to the vocational expert. For the reasons discussed herein and based on the relevant record, the Court concludes that all of the steps in the sequential disability evaluation process should be evaluated anew following remand of this matter. See 42 U.S.C. § 405(g); see also Bayliss, supra, 427 F.3d at 1214 n.1. Plaintiff should be afforded a *de novo* hearing and should be able to present new evidence and arguments following remand, as relevant to the appropriate period of time.

## CONCLUSION

The ALJ failed to evaluate properly the medical evidence by failing to give specific, legitimate reasons supported by substantial evidence in support of her failure to

credit fully opinions of examining doctor, Dr. Opelenik regarding plaintiff's physical limitations; and, in support of her failure to give controlling weight to the opinions of treating physician, Dr. Karakus regarding plaintiff's mental limitations.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on April 27, 2012, as noted in the caption.

Dated this 4th day of April, 2012.

J. Richard Creatura
United States Magistrate Judge